**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **MELVIN KEITH RICHARDSON,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 07-2065** |
| **JOSEPH PIAZZA, et al.,** | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

**MEMORANDUM**

**Tucker, C.J.**                                               **December 18, 2015**

Presently before the Court is the issue of whether post-conviction counsel's

ineffectiveness constitutes cause for the procedural default of Melvin Keith Richardson's

("Petitioner's") claims.  Upon review of the parties' submissions and the record of this case, the

Court finds that Petitioner's post-conviction counsel's ineffectiveness does not constitute cause

for the procedural default of Petitioner's claims and his Amended Petition for Writ of Habeas

Corpus is DENIED.

I.        **FACTUAL AND PROCEDURAL BACKGROUND**

        *A.  The Trial*

On February 20, 2003, Petitioner, a Maryland citizen, was arrested in connection with

two home burglaries in the Commonwealth of Pennsylvania and Petitioner's subsequent car

chase and collision with state troopers.  The Chester County Public Defender's Office assigned

Petitioner's case to Attorney Elizabeth Plasser-Kelly ("Pretrial Counsel").[1]  During Pretrial

---

[1] There is some dispute as to whether Pretrial Counsel represented Petitioner in the Preliminary Hearing;
however, this inconsistency need not be addressed for purposes of the resolution of this matter.

Counsel's representation, Petitioner was presented with a plea offer from the Chester County District Attorney's Office.[2]  Petitioner did not accept the plea of offer and instead retained Attorney Joseph Green, Jr. ("Trial Counsel") to represent him at trial.[3]

On August 20, 2003, a Chester County jury convicted Petitioner of two counts of burglary, two counts of criminal conspiracy to commit burglary, two counts of theft by unlawful taking or disposition, three counts of aggravated assault, and one count of fleeing or attempting to elude a police officer.  Prior to the trial court's imposition of its judgment of sentence, Petitioner terminated Trial Counsel.  Petitioner proceeded *pro se* for the second sentencing hearing, with Trial Counsel acting as standby counsel, and on December 18, 2003, the Honorable Juan R. Sanchez sentenced Petitioner to a term of 17 and a half years to 39 years.

        B.   *Direct Appeal*

Attorney Christian Hoey ("Appellate Counsel") represented Petitioner following Petitioner's conviction.  Appellate Counsel first filed a motion for reconsideration with the trial court which was subsequently denied.  Pet'r Mem., Exh. N, Doc 71.[4]

On appeal, Appellate Counsel challenged the validity of Petitioner's sentence by alleging that (1) the trial court erred by abusing its discretion at sentencing; (2) the trial court erred by sentencing Petitioner consecutively on each burglary count; (3) the sentence imposed was illegal because it deviated from the sentencing guidelines without proper justification; (4) the verdict was against the great weight of the evidence regarding the aggravated assault charge; (5) the trial court erred at sentencing when it concluded that Petitioner's son purposely lied on behalf of

---

[2] The Pennsylvania Office of the Attorney General subsequently replaced the Chester County District Attorney's Office to prosecute the matter.

[3] It is unclear as to when Trial Counsel's representation of Petitioner began.  At the evidentiary hearing, Trial Counsel said representation began on or about July 30, 2003.  Evidentiary Hearing Transcript, March 27, 2013 ("Evid. Tr."), at 11–12.  At the PCRA evidentiary hearing, however, Trial Counsel said that he first spoke with Petitioner on August 4, 2003.  Pet'r Mem., Exhibit X, at 7.

[4] Every reference to an Exhibit in this Opinion is a reference to an Exhibit in Petitioner's Memorandum.

Petitioner at Petitioner's request; and (6) the trial court erred at sentencing by considering Petitioner's prior bad acts and unrelated criminal behavior in imposing its sentence.  Exh. O ¶¶ 1–6.  Appellate Counsel essentially argued that "the sentence was manifestly excessive."  Exh. Q at 2.   The Superior Court was unpersuaded by Appellate Counsel's arguments and affirmed Petitioner's judgment of sentence on April 8, 2005.

### C.  PCRA Proceedings

After filing a *pro se* Post Confliction Relief Act ("PCRA") petition, the PCRA court appointed Petitioner counsel.  On November 2, 2005, before counsel could file an amended petition, Petitioner filed a *pro se* amended PCRA petition.  On November 14, 2005, Attorney Robert Brendza ("PCRA Counsel") filed an amended PCRA petition on Petitioner's behalf.  PCRA Counsel argued that Trial Counsel and Appellate Counsel "were ineffective for failing to raise the issue that counsel failed to request that the audio tape recording of the automobile chase and the motor vehicle accident that eventually occurred as a result thereof be preserved for examination and presentation to the jury at trial."  Exh. U at 2.

At the initial PCRA evidentiary hearing, the PCRA court permitted Petitioner to raise the arguments that he felt had merit in addition to the single argument advanced by PCRA Counsel.  Exh. W at 6–7.  Petitioner argued that (1) Appellate Counsel was constitutionally ineffective, (2) Trial Counsel was constitutionally ineffective, and (3) the trial court erred in imposing its judgment of sentence.  *Id.* at 6–7.   In particular, Petitioner alleged that both Trial and Pretrial Counsel failed to "file to disclose . . .  evidence that should have been filed for [Petitioner's] trial" and that Trial Counsel failed to obtain medical records which could have indicated the degree to which one of the troopers was allegedly injured.  *Id.* at 10, 23–24.  Petitioner also orally informed the PCRA court that in his opinion, Trial Counsel was also ineffective for failing

to call a witness that Petitioner wanted to testify, Ms. Mary Testerman ("Ms. Testerman").  *Id.* at 14–15.  Petitioner was adamant in raising these issues before the PCRA court so that they may be preserved for appeal and become a part of the record.  *Id.* at 7.   After hearing from Petitioner and PCRA Counsel, the PCRA court instructed PCRA Counsel to submit a letter to the court that described why each issue raised by Petitioner was without merit.  *Id.* at 26.

On January 11, 2006, PCRA Counsel submitted a letter to the PCRA court pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988), that outlined the reasons why Petitioner's additional habeas claims were meritless.  Exh. Y at 1.  PCRA Counsel argued: (1) Trial Counsel was not ineffective for failing to call Ms. Testerman at trial to testify on Petitioner's behalf, (2) Trial Counsel and Appellate Counsel were not ineffective for failing to preserve issues of merit that could be heard on direct appeal to the Superior Court, (3) the sentencing judge, the Honorable Juan R. Sanchez, did not err concerning Petitioner's right to be represented at sentencing, and (4) Trial Counsel was not ineffective during pretrial and trial for not requesting or preserving medical records to support Petitioner's claims.  Exh. Y at 2–4.

On March 16, 2006, the PCRA court denied Petitioner's amended PCRA petition.  In regards to the single claim raised by PCRA Counsel, the Honorable John L. Hall concluded that "[t]he credible evidence . . . fails to support [Petitioner's] Amended PCRA Petition claim because [Petitioner] failed to prove that there were ever any barracks audiotape recordings that pertained to the critical fact question of whether [Petitioner] rammed the state police vehicle."  Exh. Z at 3.  In the court's order, Judge Hall also addressed the four issues Petitioner raised, but PCRA Counsel found meritless.  *Id.* at 3–4.  Judge Hall likewise concluded that none of these claims had merit.  *Id.*

4

PCRA Counsel filed an appeal from the PCRA court's decision on April 11, 2006. The PCRA court affirmed its decision on April 17, 2006. PCRA Counsel then filed an appeal to the Superior Court of Pennsylvania on June 2, 2006. On September 5, 2006, the Superior Court affirmed the lower court's denial of the amended PCRA petition. The Supreme Court of Pennsylvania denied the petition for allowance of appeal from the order of the Superior Court on January 3, 2007.

   D.  *28 U.S.C. § 2254 Petition*

In February 2007, Petitioner filed a *pro se* petition pursuant to 28 U.S.C. § 2254 in the Middle District of Pennsylvania. Petitioner filed a *pro se* amended petition in April 2007. On May 21, 2007, Petitioner's petition for writ of habeas corpus was transferred to the Eastern District of Pennsylvania. On April 9, 2008, Petitioner filed a *pro se* amended petition (the "Amended Petition"). Petitioner's Amended Petition set forth the following claims:

   Claim A: Attorney "Jane Doe" was ineffective for not requesting that the police chase "web based report" and audio tape of the chase were not preserved for trial;

   Claim B: [Pretrial Counsel] was ineffective for failing to explain petitioner's true sentence exposure, discuss advantages and disadvantages of accepting a pretrial plea offer by the district attorney;

   Claim C: [Pretrial Counsel] was ineffective for failing to competently investigate, prepare for trial, and preserve exculpatory/impeachment audio tape and/or it's transcription for trial;

   Claim D: [Pretrial Counsel] was ineffective for not requesting or consulting an accident reconstruction expert in preparation for trial;

   Claim E: The Prosecution was guilty of willful misconduct and/or gross negligence by not disclosing a web based report and an audio tape of the police chase upon discovery request by the defense;

   Claim F: [Trial Counsel] was ineffective for not performing competent, independent pretrial discovery, investigation and for not calling key witnesses to testify at trial;

Claim G: [Trial Counsel] was ineffective for failing to obtain, or consult, an accident reconstruction expert or other qualified experts for trial;

Claim H: [Trial Counsel] was ineffective for not objecting to or requesting a mistrial in open court in response to the court's refusal to give the jury a missing evidence instruction;

Claim I: [Trial Counsel] was ineffective for abandoning his client during the sentencing phase;

Claim J: The trial court erred by not performing an in depth on the record colloquy when petitioner released his retained counsel during sentencing;

Claim K: The trial court erred by refusing to give the jury a missing evidence instruction and/or cautionary instruction relating to the audio tape's destruction;

Claim L: The trial court acted with personal bias and ill-will towards the petitioner;

Claim M: [Appellate Counsel] was ineffective for not performing an independent investigation into the trial record to identify meritable issues for appeal and not briefing them to the court; and

Claim N: [PCRA Counsel] was ineffective for not independently searching the record for meritable issues for Post Conviction Relief (P.C.R.A.) and briefing them to the court.

Amended Petition, Doc. 15, at 5–6.

Magistrate Judge Caracappa issued a report and recommendation that the Amended Petition be dismissed on December 30, 2008. On January 20, 2010, Judge Pollak issued an opinion and an order that dismissed the Amended Petition.

On February 4, 2010, Petitioner appealed Judge Pollak's ruling to the Third Circuit. The Third Circuit denied Petitioner's request for a certificate of appealability on June 21, 2010.

On September 23, 2010, Petitioner filed in the district court a Petition for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6). On July 20, 2011, Judge Pollak issued an opinion and order denying the petition. Petitioner appealed Judge Pollak's denial to the Third Circuit on August 15, 2011. The Third Circuit denied Petitioner's request for a

certificate of appealability on November 8, 2011.  Petitioner then applied for a writ of certiorari

in the United States Supreme Court.  The Supreme Court then remanded the matter to the Third

Circuit in light of its ruling in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  On April 5, 2013, the

Third Circuit issued an order remanding the case to this Court to determine whether post-

conviction counsel's ineffectiveness constitutes cause for the procedural default of Petitioner's

claims.[5]

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over Petitioner's claims pursuant to 28 U.S.C. § 2254.

Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas

corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254(a) (2012).  In addition to the requirement that habeas petitioners be in

custody in violation of the Constitution, laws, or treaties, petitioners are also required to "exhaust

the remedies available in the courts of the State" prior to seeking habeas relief in federal court.

28 U.S.C. § 2254 (b).[6]   A petitioner satisfies "this exhaustion requirement . . . [by] 'afford[ing]

each level of the state courts a fair opportunity to address the claim.'"  *Laird v. Horn*, 159 F.

Supp. 2d 58, 69 (E.D. Pa. 2001) (quoting *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996)).

---

[5] This Court will not address Claims E, J, K, and L in the Amended Petition because they do not allege
that Petitioner's attorney was constitutionally deficient and thus are outside the purview of the Third
Circuit's remand Order and *Martinez.* Accordingly, Judge Pollak's January 20, 2010 ruling will stand on
these claims.

[6] Section 2254(b) states in its entirety:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a
State court shall not be granted unless it appears that-- (A) the applicant has exhausted the remedies
available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

Accordingly, if a state court adjudicated a petitioner's claim on the merits, this Court is

prohibited from providing habeas relief

> unless adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In the alternative, if a state habeas petitioner fails to exhaust the remedies available in

state court, the petitioner "defaulted his federal claims in state court pursuant to an independent

and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Accordingly, "federal habeas review of the claims is barred unless the prisoner can demonstrate

cause for the default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of

justice." *Id.* In order to prove "cause" a "petitioner must 'show that some objective factor

external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"

*Werts v. Vaughn*, 228 F.3d 178,193 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478,

488 (1986)). A petitioner may prove that he was "actually prejudiced" as a result of the violation

of federal law by showing "'not merely that the errors at ... trial created a possibility of prejudice,

but that they worked to his actual and substantial disadvantage, infecting his entire trial with

error of constitutional dimensions.'" *Id.* (quoting *Murray*, 477 U.S. at 494).

In *Coleman*, the Court distinguished "attorney ignorance or inadvertence" with

constitutionally deficient counsel and ruled that the latter can constitute cause for a petitioner's

procedural default. *Coleman*, 501 U.S at 753–54. The Court reasoned that when "a petitioner

defaults a claim as a result of the denial of the right to effective assistance of counsel, the State,

8

which is responsible for the denial as a constitutional matter, must bear the cost of any resulting

default and the harm to state interests that federal habeas review entails." *Id.* at 754.  The Court

did, however, limit its ruling that ineffective assistance of counsel constitutes cause for failure to

exhaust available state remedies only in situations where a petitioner has a right to counsel.  *Id.*

at 756–57.

In *Martinez v. Ryan*, the Court revisited an issue that it declined to rule on in *Coleman*,

specifically, "whether ineffective assistance in an initial-review collateral proceeding on a claim

of ineffective assistance at trial may provide cause for a procedural default in a federal habeas

proceeding."  132 S. Ct. at 1315.  The Court ruled in the affirmative and held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-
> counsel claim in a collateral proceeding, a prisoner may establish cause for a
> default of an ineffective-assistance claim in two circumstances. The first is where
> the state courts did not appoint counsel in the initial-review collateral proceeding
> for a claim of ineffective assistance at trial. The second is where appointed
> counsel in the initial-review collateral proceeding, where the claim should have
> been raised, was ineffective under the standards of *Strickland v. Washington,* 466
> U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a
> prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-
> counsel claim is a substantial one, which is to say that the prisoner must
> demonstrate that the claim has some merit.

*Id.* at 1318.  The district court has interpreted the term "merit" to mean a claim in which "'jurists

of reason could disagree with the [lower] court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further.'"  *Huggins v. Kerestes*, No. 12–3655, 2013 WL 5405320, at *3 (E.D. Pa. Sept. 26, 2013)

(quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

The Supreme Court in *Martinez* reasoned that its ruling was appropriate in light of the

reality that for many petitioners, "the initial-review collateral proceeding is the first designated

proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral

proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Martinez*, 132 S. Ct. at 1317.  Therefore, "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." *Id.* at 1316.

Accordingly, it is with this backdrop that the Court will analyze Petitioner's Amended Habeas Petition.

### III.   DISCUSSION

In the instant action, Petitioner did not have the opportunity to raise claims of ineffective assistance on direct appeal because the general rule in Pennsylvania is that a defendant must wait to raise any claims of ineffective assistance of trial counsel until collateral review. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002).  Therefore, Petitioner's claims fall within the second scenario noted in *Martinez* and this Court may grant relief on Petitioner's procedurally barred claims if Petitioner demonstrates that PCRA Counsel was ineffective for failing to raise claims of trial counsel's ineffectiveness in accordance with *Strickland v. Washington*, 466 U.S. 668 (1984).  *Martinez*, 132 S.Ct. at 1318.  If PCRA counsel is found to be constitutionally ineffective, Petitioner must then demonstrate that the underlying claims have merit.  *Id.*

In order to satisfy the *Strickland* standard of ineffective assistance of counsel, Petitioner "must prove (1) that his trial counsel's performance was 'deficient, that is, it fell below an objective standard of reasonableness,' and (2) 'that counsel's deficient performance prejudiced' him, *i.e.,* that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014) (quoting *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007)).  A "reasonable

10

probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The district court is to determine "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.  The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  Accordingly, the court must "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case . . . [the court must also] recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Consequently, there is "a heavy measure of deference to counsel's judgments." *Id.* at 691.  Thus, "S*trickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681–82 (3d Cir. 2006).  Nevertheless, "[o]nly choices made after a reasonable investigation of the factual scenario are entitled to a presumption of validity." *Id.*  Petitioner's "counsel ha[d] a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  Nevertheless, habeas relief will not be granted, "[e]ven if [Petitioner] shows that particular errors of counsel were unreasonable" unless he also shows that the errors "actually had an adverse effect on the defense" such that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94.

In evaluating each claim, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by [Petitioner] as a result of the alleged deficiencies."  *Id.* at 697.  Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the

11

ground of lack of sufficient prejudice . . . that course should be followed." *Id.* Accordingly, the Court will evaluate each of Petitioner's claims under the *Strickland* framework.

> A. *Claims A and C: Attorney "Jane Doe" and Pretrial Counsel Failed to Investigate, Prepare for Trial, and Preserve Exculpatory/Impeachment Audio Tape Evidence and/or its Transcription for Trial*

Petitioner argues that both Attorney "Jane Doe," his preliminary hearing counsel, and Pretrial Counsel were ineffective for failing to secure an audiotape prior to trial. The audiotape was expected to include the "radio communications between radio operators in state police vehicles and the barracks' radio dispatcher on February 20, 2003"—the day of the collision. Exh. Z at 3. This was the only argument advanced by PCRA Counsel. In particular, PCRA Counsel argued that Trial Counsel and Appellate Counsel "were ineffective for failing to raise the issue that counsel failed to request that the audio tape recording of the automobile chase and the motor vehicle accident that eventually occurred as a result thereof be preserved for examination and presentation to the jury at trial." Exh. U at 2. The PCRA Court found that this claim was without merit and that "[t]he credible evidence . . . fail[ed] to support [Petitioner's] Amended PCRA Petition." Exh. Z at 3. Thus, the first issue before the Court is whether the claims pertaining to Attorney "Jane Doe" and Pretrial Counsel were properly adjudicated on the merits before it subjects the claims to a *Martinez* analysis.

As stated above, this Court may not grant federal habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). There are two exceptions, however, and this Court may grant relief only if "the adjudication of the claim-- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." *Id.*  Accordingly, a claim is adjudicated on the merits if it is "a decision finally resolving the parties' claims, with res judicata effect,[7] that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir.2004) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001)), *rev'd on other grounds sub nom. Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).  Therefore, "when a valid state court judgment exists[,] a federal habeas court should generally presume that the state court properly exercised its jurisdiction." *Lambert v. Blackwell*, 387 F.3d 210, 238 (3d Cir. 2004).

This Court agrees with Judge Pollak's determination that "[w]hile the amended petition is not artfully drafted . . . [t]he PCRA petition . . . presented to the state courts the question of whether [Pretrial Counsel] was ineffective for failing to request the [audiotape,] and the amended petition includes the same claim."  Mem. Op., Doc. 33, at 7–8.  At the first day of the PCRA evidentiary hearing, Petitioner informed the PCRA court that he wanted to "add" Pretrial Counsel to his PCRA petition because both she and Trial Counsel failed to request the audiotape, thus the PCRA Court was aware that the claim also applied to Pretrial Counsel.  Exh. W at 10. Additionally, in affirming the lower court's dismissal of Petitioner's PCRA petition, the Superior Court restated the one issue on appeal as Petitioner arguing "that his trial counsel rendered ineffective assistance because *she* failed to preserve a state police audiotape recording. . . ."  Exh. DD at 1 (emphasis added).  Lastly, the PCRA court made express findings concerning the date of the collision, Attorney "Jane Doe," and Pretrial Counsel as well as both Trial and Appellate

---

[7] A claim is barred by the doctrine of res judicata if there is "a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies.'" *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) (quoting *EEOC v. United States Steel Corp*., 921 F.2d 489, 493 (3d Cir. 1990)).

Counsel.  Exh. Z at 3.  Thus, this Court concludes that the claim was adjudicated on the merits in the state court proceeding.

In the PCRA petition, Petitioner argued that trial counsel was constitutionally ineffective for failing to request and preserve the audiotapes, thus *Strickland* governs this Court's analysis. The Court may only grant relief if it finds that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of" *Strickland*, or if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d).  Nonetheless, this Court must presume that the factual determinations made by the state court were correct.  28 U.S.C. § 2254(e)(1).  Petitioner could only rebut this "presumption of correctness by clear and convincing evidence."  *Id.*  The ultimate conclusion that counsel was constitutionally effective, however, "'is not a finding of fact binding on the federal court' because it is 'a mixed question of law and fact' and not a question of historical fact.'"  *Deputy v. Taylor*, 19 F.3d 1485, 1494 (3d Cir. 1994) (quoting *Strickland*, 466 U.S. at 698).

The PCRA court's application of *Strickland* was not unreasonable because Petitioner failed to demonstrate there was a "'reasonable probability that, but for'" Attorney "Jane Doe's" and Pretrial Counsel's failure to request and preserve the audiotape, the outcome of the trial would have been different.  *Glenn*, 743 F.3d at 409 (quoting *Albrecht*, 485 F.3d at 127).  The PCRA Court made four crucial findings of fact:

> [Petitioner's] preliminary hearing occurred on or about March 10, 2003, at which time [Petitioner] was represented by a staff attorney for the Chester County Public Defender's Office . . . [Pretrial Counsel] entered her appearance on behalf of [Petitioner] on or about March 20, 2003. . . . [Petitioner] never requested the staff attorney who represented him on March 10, 2003, or [Pretrial Counsel,] to investigate or seek the preservation of the Avondale state police barracks' February 20, 2003 audiotape . . . [and] there is no credible evidence to establish that [Petitioner's] preliminary hearing counsel or [Pretrial Counsel] should have

14

known that the February 20, 2003 Avondale state police barracks' audiotape existed, contained communications that were relevant to the charged pending against [Petitioner], or needed to be requested by March 22, 2003 in order to be preserved.

Exh. Z at 3.  The PCRA court also found that "there is no credible evidence that any radio communications were made by the state police troopers participating in the pursuit of [Petitioner's] vehicle, to the . . . police barracks dispatcher either at the approximate time when contact was made between the state police vehicle and [Petitioner's] vehicle, or describing the event." *Id.*  Thus, Petitioner fails to demonstrate a reasonable probability that but for Attorney Jane Doe's and Pretrial Counsel's error, the guilty verdict would have been different. Accordingly, the PCRA court's application of *Strickland* was reasonable.

Similarly, the PCRA Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.  While Trooper Daniel Stumph, one of the troopers involved in the pursuit of Petitioner at the time of the incident, admitted at trial that there was radio communication between him and the barracks during the pursuit of Petitioner, the record does not indicate that the conversation (1) was recorded, (2) occurred at or near the time of the collision, or (3) concerned the collision and not the proposed road block.  *See* Exh. E at 118–121. Accordingly, the PCRA court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

Therefore, Petitioner's claims, while properly exhausted, were adjudicated on the merits and neither involved an unreasonable application of *Strickland* nor resulted in a decision that was based on an unreasonable determination of the facts.  Accordingly, Petitioner's claims that Attorney "Jane Doe's" and Pretrial Counsel failed to request and preserve the audiotape is denied.

15

B. *Claim B: Pretrial Counsel Failed to Explain Proposed Guilty Plea and Petitioner's Sentencing Exposure*

Second, Petitioner argues that his pretrial counsel was ineffective for failing to explain Petitioner's true sentence exposure and to discuss the advantages and disadvantages of accepting a pretrial plea offer by the district attorney.

A defendant's Sixth Amendment right to effective counsel applies to the entire proceeding, including plea bargaining. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).  It is "[o]nly when the defendant has an understanding of the alternative courses of action can he make an intelligent and voluntary decision to stand trial or plead guilty." *United States v. Sherman*, Civil Action No. 09–0765, 2009 WL 4362568, at *3 (E.D. Pa. Nov. 30, 2009).  Therefore, "[a] petitioner has a Sixth Amendment claim when 'the advice that he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'"  *United States v. Cobb*, Civil Action No. 13–4754,  2015 WL 3889175, at *5 (E.D. Pa. June 24, 2015) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)).

Accordingly, "[i]n the context of a guilty plea, counsel is required to give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *Day*, 969 F.2d at 43).  For guilty pleas, a defendant can establish *Strickland* prejudice if he can "show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384.   When a petitioner chooses to reject a plea offer and stand trial rather than accept the plea offer, a Petitioner satisfies the *Strickland* prejudice requirement if he proves:

(1) that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [(2)] that the court would have accepted its terms, and [(3)] that the conviction or sentence, or both, under the offer's terms

16

would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385 (alteration in original).[8]  The prejudice prong of *Strickland* is unsatisfied, however, when the record indicates that the petitioner continued to maintain his innocence because this illustrates an unwillingness to accept the guilty plea and thus does not prove that "but for the ineffective advice of counsel there is a probability that the plea offer would have been presented to the court."  *United States v. Seeley*, 574 F. App'x 75, 80 (3d Cir. 2014) (quoting  *Lafler*, 132 S. Ct. at 1385); *see also Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) (concluding that "[a] defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer"); *United States v. Murray*, Civil No. 13–2239, 2015 WL 3947173, at *7 (E.D. Pa. June 29, 2015) (concluding that petitioner failed to satisfy the prejudice prong of *Strickland* because "[t]hroughout Petitioner's criminal case at the district and appellate levels . . . he has maintained his innocence.").

Contrary to Respondents' contention, PCRA Counsel can be held constitutionally deficient for failing to raise the argument that Pretrial Counsel failed to explain the proposed guilty plea and Petitioner's sentencing exposure.  See *Martinez*, 132 S. Ct. at 1318 (holding that

---

[8] While some circuits "require some kind of 'objective evidence' that the petitioner would have pled guilty but for counsel's ineffective advice. . . . [t]he Third Circuit, however, has not yet opted to join those circuits in so holding."  *Cobb*,  2015 WL 3889175, at *7 (citing *United States v. Purcell,* 667 F. Supp. 2d 498, 511–12 (E.D. Pa. 2009)); *see also Boyd v. Walmart*, 579 F.3d 330, 356 (3d Cir. 2009) (explaining that while "other courts have applied a burden that is seemingly higher and requires objective evidence to show prejudice . . . [the Third Circuit] opted to join those courts that use a case-by-case analysis looking strictly at the facts of each case [and found] that it is not always necessary . . . to offer objective evidence"); *Alevras v. Tacopina*, 226 F. App'x 222, 233 (3d Cir. 2007) (finding that *United States v. Jones*, 336 F.3d 245 (3d Cir. 2003), "does not demonstrate a strict requirement for objective evidence to show ineffective assistance of counsel.").

when appointed collateral review counsel was ineffective under *Strickland* for not raising a claim of ineffective assistance of trial counsel, a petitioner may establish cause for his procedural default).   Nonetheless, this Court agrees with Respondents that because Petitioner maintained his innocence prior to, during, and after the trial regarding the aggravated assault charge, he cannot prove "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court." *Lafler*, 132 S. Ct. at 1385.   Petitioner testified at the second sentencing hearing that he did not want to accept the initial plea offer because he "didn't do this aggravated assault that [he's] being accused of."  Exh. L at 7.  Pretrial Counsel also recounts that Petitioner was dissatisfied with the plea agreement because Petitioner "wanted to argue that he did not cause the accident with the troopers."  Evidentiary Hearing Transcript, March 27, 2013 ("Evid. Tr."), at 79, 83–84.  Additionally, Petitioner testified at the PCRA evidentiary hearing that he "never assaulted any officers and that [he] didn't feel that [he] should be convicted of assaulting any officers and that [he] would like to take that part to trial."  Exh. W at 33.

In addition to Petitioner's consistent contention that he was innocent on the aggravated assault charge, there is some uncertainty as to whether the trial court would have even been presented with the plea offer because the prosecution may have voided the initial offer after it received Petitioner's prior record score.  Evid. Tr. at 74, 84–85.[9]  Accordingly, Petitioner's claim that Pretrial Counsel rendered ineffective assistance because she failed to adequately explain the proposed guilty plea and Petitioner's trial exposure is denied.

C.  *Claim D: Pretrial Counsel Failed to Request or Consult an Accident Reconstruction Expert in Preparation for Trial*

---

[9] Pretrial Counsel and the District Attorney's Office negotiated the plea agreement with the belief that Petitioner's prior record score was a 5.  At sentencing, however, it was determined that Petitioner's true prior record score was a 12.  Exhibit I at 13–15.

Third, Petitioner contends that Pretrial Counsel was ineffective for not requesting or consulting an accident reconstruction expert in preparation for trial.

As addressed above, in order to demonstrate that Pretrial Counsel was ineffective, Petitioner "must prove (1) that his trial counsel's performance was 'deficient, that is, it fell below an objective standard of reasonableness,' and (2) 'that counsel's deficient performance prejudiced' him, *i.e.,* that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Glenn*, 743 F.3d at 409 (quoting *Albrecht*, 485 F.3d at 127). The Court "must judge the reasonableness of [Pretrial Counsel's] challenged conduct on the facts of the particular case, viewed as of the time of [Pretrial Counsel's] conduct." *Strickland*, 466 U.S. at 690. The Court must ultimately "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Prior to Pretrial Counsel's termination, Pretrial Counsel did not contact an accident reconstruction expert. Evid. Tr. at 80. Petitioner contends that this failure constitutes ineffective assistance of counsel. Petitioner overlooks, however, the fact that Pretrial Counsel was terminated prior to trial. *Id.* While Pretrial Counsel did initially determine that, in order to argue that Petitioner did not cause the accident with the troopers, Petitioner would either have had to take the stand or the Public Defender's Office would have had to hire an accident reconstructionist, she did not hire an accident reconstruction expert. *Id.* at 79. Pretrial Counsel testified at the PCRA evidentiary hearing that she had not received photographs from the Office of the Attorney General nor did she receive an accident reconstruction report. Exh. X at 49–50. Pretrial Counsel explained that she intended to give the prospective accident reconstruction report and photographs to an expert once she received them "to review and see if some type of

opinion could be rendered consistent with what [Petitioner] had [told her]." *Id.* Pretrial Counsel decided not to investigate the matter further because Petitioner indicated that he wanted to hire private counsel. Evid. Tr. at 80. Thus, Pretrial Counsel was "in limbo" and thus did not take additional action in terms of requesting an accident reconstruction report or expert. *Id.*

Pretrial Counsel's decision not to request or consult an accident reconstruction expert was reasonable and constituted professionally competent assistance. Prior to trial and while she still represented Petitioner, Pretrial Counsel had not received discovery and thus had no material on which the expert could base his findings. Additionally, Petitioner made it clear that he would be retaining private counsel, thus Pretrial Counsel had no reason to conduct any additional investigation and waste the Public Defender Office's resources. Accordingly, Petitioner fails to demonstrate that Pretrial Counsel was constitutionally deficient for failing to request or consult an accident reconstruction expert in preparation for trial and this claim is denied.

### D. Claim F: Trial Counsel Failed to Conduct Competent and Independent Pretrial Discovery and Investigation and Failed to Call Key Witnesses to Testify

Fourth, Petitioner argues that Trial Counsel was ineffective for not performing competent, independent pretrial discovery and investigation and for not calling key witnesses to testify at trial. The Court will first address the claim that Trial Counsel failed to conduct competent, independent pretrial discovery and investigation.

Petitioner avers that Trial Counsel "proceeded to trial less than two weeks after being retained [and] appeared to [be] completing the discovery process as the trial unfolded." Pet'r Mem. at 59. Petitioner further alleges that Trial Counsel's lack of preparedness was "evidenced by the fact that he had failed to secure full discovery prior to [trial] as evidenced by his mid-pre-trial hearing discovery of the existence of Neely's handwritten report and his mid-trial request for the police pursuit guidelines." *Id.* at 60. Petitioner argues that "minimal standards of

effective representation would have warranted [Trial Counsel] requesting to view [Petitioner's] vehicle which by all accounts was still in State Police Custody." *Id.* at 61–62.

In *Strickland*, the Court concluded that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Counsel's "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Accordingly, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . [particularly because] [c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* Nevertheless, if counsel "fail[s] to conduct any pretrial investigation [this] is objectively unreasonable." *Rolan*, 445 F.3d at 682. The burden is still on the Petitioner to prove that in addition to counsel's deficient performance, "'that [the] deficient performance prejudiced' him, *i.e.,* that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Glenn*, 743 F.3d at 409 (quoting *Albrecht*, 485 F.3d at 127).

This Court finds that Trial Counsel's investigative decisions were objectively reasonable. When Trial Counsel began his representation, he received discovery from Pretrial Counsel, but there was no mention of an audiotape by any party, including Petitioner, until Trial Counsel elicited that testimony from a state trooper during trial. Exh. Z at 3. It was established below by the PCRA court that "by the time [Trial Counsel] requested the February 20, 2003 . . . audiotape, it had been recycled and any . . . communications which had been recorded on it, no longer existed." *Id.* Thus, Trial Counsel did conduct reasonable investigation into the existence of the audiotape.

Additionally, while Petitioner did inform Trial Counsel of photographs that were in the possession of Ms. Testerman, Trial Counsel reasonably concluded that Ms. Testerman's photographs were unhelpful because they did not depict the driver's side of Petitioner's vehicle, which was crucial to illustrating that Petitioner did not cause the collision. Evid. Tr. at 38. Therefore, the Court agrees with the PCRA court that Trial Counsel "had ample photographic evidence at trial to present [Petitioner's] version of [the] events." Exh. Z at 3.

Lastly, though Trial Counsel proceeded to trial approximately less than a month of being retained, Petitioner fails to demonstrate that Trial Counsel's conduct was objectively unreasonable. Petitioner did not inform Trial Counsel of any potential evidence besides the photographs and Trial Counsel sufficiently determined that these photographs were not helpful to Petitioner's case. Additionally, Trial Counsel arduously pursued Petitioner's claim that he did not commit the aggravated assault and attempted to discredit the prosecution's witnesses to cast reasonable doubt on Petitioner's guilt. Accordingly, because Trial Counsel did conduct pretrial and trial investigations that were reasonable in light of the circumstances, the Court finds that Petitioner's claim that Trial Counsel failed to conduct competent, independent pretrial discovery and investigation is without merit and is denied.

Next, the Court will evaluate Petitioner's claim that Trial Counsel failed to call key witnesses.

Petitioner contends that Trial Counsel was constitutionally ineffective for failing to call Ms. Testerman to testify. Respondents, however, allege that PCRA Counsel addressed this issue with the PCRA court and thus this claim has been adjudicated on the merits. Respondents further argue that the proposed witness, Petitioner's fiancée, did not have any testimony germane

22

to Petitioner's charges and thus the claim is meritless.  Therefore, the Court must first determine whether *Martinez* applies or if this claim was properly exhausted below.

This Court may not grant federal habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d).  There are, however, two exceptions and this Court may grant relief only if "the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  As explained above, a claim is adjudicated on the merits if it is "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'"  *Rompilla,* 355 F.3d at 247 (quoting *Sellan*, 261 F.3d at 311).

This Court finds that the issue was adjudicated on the merits below.  While PCRA Counsel only brought one argument regarding Trial Counsel and Appellate Counsel's ineffectiveness for failing to request and preserve the audiotape, the PCRA court permitted Petitioner to bring four additional arguments, including Trial Counsel's failure to call Ms. Testerman as a witness.  During the PCRA evidentiary hearing, the PCRA court instructed PCRA Counsel to write a letter and explain why that issue lacked merit.  Exh. W at 26.  In its opinion, the PCRA court concluded that "the record is clear that [Ms. Testerman] was not a fact witness to the material events of February 20, 2003" and thus this claim was without merit.  Exh. Z at 3.  Thus, this Court concludes that the claim was adjudicated on the merits in the state court proceeding.

In his *pro se* PCRA petition, Petitioner argued that trial counsel was constitutionally ineffective for failing to call key witnesses, thus *Strickland* governs this Court's analysis. This Court may only grant federal habeas relief if it finds that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," *Strickland*, or if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). The Court must presume that the factual determinations made by the state court were correct. 28 U.S.C. § 2254(e)(1). Petitioner can only rebut this "presumption of correctness by clear and convincing evidence." *Id.* The ultimate conclusion that counsel was constitutionally effective, however, "'is not a finding of fact binding on the federal court' because it is 'a mixed question of law and fact' and not a question of historical fact.'" *Deputy*, 19 F.3d at 1494 (quoting *Strickland*, 466 U.S. at 698)).

The PCRA court's application of *Strickland* was not unreasonable because Petitioner fails to prove there was a "'reasonable probability that, but for'" Trial Counsel's failure to call Ms. Testerman as a witness, the verdict would have been different. *Glenn*, 743 F.3d at 409 (quoting *Albrecht*, 485 F.3d at 127). Notably, the PCRA court found that Ms. Testerman "was not a fact witness to the material events of February 20, 2003 and that [Petitioner] and [Trial Counsel] had ample photographic evidence at trial to present [Petitioner's] version of those events." Exh. Z at 3. Therefore, Petitioner fails to demonstrate that there was "a probability sufficient to undermine confidence in the outcome" that the result of the proceeding would have been different had Ms. Testerman testified. *Strickland*, 466 U.S. at 694. Accordingly, the PCRA court's application of *Strickland* was reasonable.

Additionally, the PCRA Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner told the PCRA Court that

Ms. Testerman could have testified to the "circumstances that led up to this crime[,] to circumstances that happened after the crime, when the police came to [his] residence in Maryland to search [his] home . . . [and] things that [were] said to her by [the police], several things that [were] aggravating factors in [his] case." Exh. W at 15. On the other hand, Trial Counsel testified that while Ms. Testerman was eager to testify on Petitioner's behalf, Trial Counsel did not recall any evidence that Ms. Testerman could testify to that was "legally relevant." Exh. X at 15. Trial Counsel also told the PCRA court that, to his knowledge, Ms. Testerman was not a witness to the burglary or the chase/collision. *Id.* at 16. Accordingly, the PCRA court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

In sum, this issue was adjudicated on the merits and neither involved an unreasonable application of *Strickland* nor resulted in a decision that was based on an unreasonable determination of the facts. Accordingly, Petitioner failed to demonstrate that he was prejudiced by Trial Counsel's failure to call Ms. Testerman as a witness and habeas relief concerning this issue is denied.

> E. *Claim G: Trial Counsel Failed to Obtain or Consult an Accident Reconstruction Expert or Other Qualified Experts for Trial*

Fifth, Petitioner argues that Trial Counsel was ineffective for failing to obtain or to consult an accident reconstruction expert or other qualified experts for trial. In particular, Petitioner claims that Trial Counsel's "trial strategy, which was rooted in his professed views regarding the veracity of the trooper's version of events and his desire to present evidence to support this view, at a minimum, would have required him to consult with an expert to achieve a minimum standard of effectiveness." Pet'r Mem. at 59–60. Respondents contend, however,

that Petitioner fails to show that he was prejudiced by Trial Counsel's failure to obtain or consult an accident reconstruction expert.

As stated above, in order to satisfy the *Strickland* standard of ineffective assistance of counsel, Petitioner "must prove (1) that his trial counsel's performance was 'deficient, that is, it fell below an objective standard of reasonableness,' and (2) 'that counsel's deficient performance prejudiced' him, *i.e.,* that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Glenn*, 743 F.3d at 409 (quoting *Albrecht*, 485 F.3d at 127). This Court "recognize[s], [however] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Therefore, if Trial Counsel made "a reasonable investigation of the factual scenario[,]" then his "strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better." *Rolan*, 445 F.3d at 681–82. The Court will determine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.

While Trial Counsel conceded that he did not consult an accident reconstruction expert, he explained that:

> [He] had . . . a lot of experience in accident-related criminal stuff. And [he] is not an accident reconstructionist, but [he] [has] a lot of experience with damage assessment in vehicles. And . . . a review of the physical evidence by an accident reconstructionist would not have helped [Petitioner], because there was no damage that was consistent with his version of the events. One of the things he said . . . is that . . . the troopers hit him from behind, they were trying to knock him off the path. And there . . . was no evidence of damage to the rear of his vehicle or the front of the vehicle that he said was striking him. So there was never going to be an accident reconstruction component to supporting his defense. . . . [T]here was no question that there was contact between the sides of the two vehicles. There was some evidence that suggested that the state trooper car came back into [Petitioner's] vehicle. So what we tried to do was to argue that the physical evidence on the side of the vehicle was consistent with [Petitioner's] views about what happened, his contentions, his testimony that he had not tried to

26

hurt anybody, and the state police's failure to preserve and present evidence about the contemporaneous radio transmissions describing what occurred was some evidence—the failure to produce was some evidence that if they had been produced, they would have been helpful to [Petitioner].  They were there three things we tried to put together in support of reasonable doubt on the aggravated assault charge.

Evid. Tr. at 30–32.

Petitioner criticizes Trial Counsel's strategy because it "clearly failed as neither of the police witnesses could testify as experts in accident reconstruction, and instead, [Trial Counsel's] questioning provided additional opportunity for the witnesses to restate their testimony which was contradictory to the defense's strategy."  Pet'r Reply, Doc. 77, at 1.  The Petitioner is accurate in stating that none of the witnesses could testify as experts in accident reconstruction. The trial court limited the state troopers' testimonies to only their actual observations on the day in question and any experiences as traffic state troopers.  *See, e.g.*, Exh. E at 67 (overruling the prosecutor's objection to Trial Counsel's line of questioning but limiting the trooper's responses "to his observations" and only allowing "questions that [were] based [on] his experience as a traffic state trooper.").  Petitioner, however, fails to prove that Trial Counsel's strategy was unreasonable in light of the circumstances.  It is true that there was contradictory testimony because Petitioner maintains that he did not cause the collision while the troopers testified to the contrary.  Trial Counsel decided that, based upon his experience and in his professional opinion, no expert could support Petitioner's account of the events and thus tried to attack the veracity of the trooper's testimonies.  Evid. Tr. at 30–32.  The Court will not second guess Trial Counsel's strategy simply because Petitioner contends there was another viable tactic.  Rather, the Court must defer to Counsel's strategy if Trial Counsel "was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688.  The Court finds in the affirmative and thus Trial Counsel was not constitutionally deficient.

27

Petitioner further avers that Pretrial Counsel's testimony that "she would have consulted . . . an expert given her conversations with [Petitioner] up until that point . . . is relevant with regard to establishing a standard of representation which satisfies the constitutional requirement of effectiveness of counsel."  Pet'r Reply at 2.  This argument is also unpersuasive.  While the Court must assess whether Trial Counsel's conduct was reasonable in accord with the prevailing professional norms, the Court must also recognize that "[t]here are countless ways to provide effective assistance in any given case. . . . [and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way."  *Strickland*, 466 U.S. at 689.  Therefore, the Court finds that Trial Counsel's performance did not fall "below an objective standard of reasonableness" and this claim must be denied.

### F.  Claim H: Trial Counsel Failed to Object to or Request a Mistrial in Response to Trial Court's Refusal to Give Jury a Missing Evidence Instruction

Sixth, Petitioner argues that Trial Counsel was ineffective for not objecting to or requesting a mistrial in open court in response to the trial court's refusal to give the jury a missing evidence instruction based upon the failure to produce the audiotapes.[10]  In *Devine v. Cameron*, the district court declined to address whether or not the petitioner's counsel was ineffective for failing to request a missing evidence instruction before first determining that petitioner was entitled to such instruction.  No. 09-171, 2015 WL 5063958, at *10 (E.D. Pa. Aug. 26, 2015).  Accordingly, the Court will begin its analysis with determining whether or not Petitioner was entitled to such instruction.

Generally, "a trial judge has broad discretion in framing the form and language of the charge to the jury."  *McNeil v. Dillman*, No. 11–CV–3092, 2014 WL 2862255, at *4 (E.D. Pa. June 23, 2014).  A trial judge need not provide "an adverse inference instruction when the non-

---

[10] The Court disagrees with Respondents' argument that Claim H was abandoned and will thus address the merits.

requesting party lacked control of that evidence by the time of the trial." *Devine*, 2015 WL 5063958, at *11. A defendant is not entitled to a missing evidence instruction when "there is nothing in the record to establish that police *ever* had control of the missing evidence." *Id.*

During a motion to dismiss hearing, Trial Counsel requested "the recordings of communications between and among Pennsylvania state troopers and their supervisors and other participants." Evid. Tr. at 15. This request was not granted because Trial Counsel was "informed by counsel that the tapes were destroyed." Exh. C at 63–64. There was a trooper policy to tape over prior recordings after approximately thirty days unless there was a request to preserve them. *Id.* at 65–66. Therefore while it is not certain what date the recording was deleted and recorded over, it was no longer in existence because neither party requested its preservation. *Id.* Thus, the audiotapes were never in the prosecution's or troopers' control and Petitioner was likely not entitled to a missing evidence instruction. Nevertheless, the Court will still assess whether or not Trial Counsel was constitutionally deficient for failing to request a mistrial or object to the trial court's refusal to give a missing evidence instruction.

In order for Petitioner to prove *Strickland* prejudice, he must demonstrate "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Glenn*, 743 F.3d at 409 (quoting *Albrecht*, 485 F.3d at 127). A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

During a discussion concerning the jury charge, Trial Counsel did request "a missing evidence charge on the tape recordings." Exh. E at 132. The trial court ruled that he "probably will not read the charge[,]" but, he permitted Trial Counsel to argue the issue to jury in his closing. *Id.* at 133. Trial Counsel did in fact tell the members of the jury that "there [were] two

kinds of evidence that you don't have that you should have." Exh. F at 9.  Trial Counsel further

argued that there are supposed to be "open lines" of communication with a supervisor during a

pursuit which are supposed to be recorded and a report generated, however, "the state police

conceded that they hadn't looked to see whether there was a pursuit report." *Id.* at 10.

Petitioner cannot prove that "but for" Trial Counsel's failure to request a mistrial or

object to the trial court's refusal to give a missing evidence instruction that the jury verdict

would be different.  This is particularly true in light of the fact that Trial Counsel did in fact

argue to the jury that there was missing evidence.  It was up to the jury to assign weight to Trial

Counsel's arguments, but he did sufficiently address the missing audiotapes.  Thus, Petitioner

cannot demonstrate that he was prejudiced by Trial Counsel's failure to request a mistrial or

object to the trial court's refusal to give a missing evidence instruction that the jury verdict

would be different and the claim must be denied.

### G.  *Claim I: Trial Counsel Abandoned Petitioner During Penalty Phase*

Seventh, Petitioner contends that Trial Counsel was ineffective for abandoning Petitioner

during the sentencing phase of the proceeding.  Respondents maintain, however, that "when

[Petitioner] elected to represent himself there was nothing left to accomplish during the

proceeding other than for the judge to pronounce sentence."  Resp. Br., Doc. 75, at 33.

Once a court accepts a defendant's waiver of his right to counsel, the court may then

appoint standby counsel for the defendant.  234 Pa. Code § 121(d).  Standby counsel has a

limited role and "shall attend the proceedings and shall be available to the defendant for

consultation and advice."  *Id.*  Nevertheless, "[t]he *pro se* defendant must be allowed to control

the organization and content of his own defense, to make motions, to argue points of law, to

participate in voir dire, to question witnesses, and to address the court and the jury at appropriate

points in the trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).  It is crucial that "the *pro se* defendant is entitled to preserve actual control over the case." *Id.* at 178.

Petitioner's sentencing hearing lasted two days.  The trial court declined to impose a sentence after the first day because Trial Counsel requested a psychological evaluation and the court wanted to consider the issues raised during the first day prior to fashioning a sentence.  Exh. I at 30.  The court did state, however, that at the next hearing, it would "pronounce [its] sentence" and made no mention of additional argument from the parties. *Id.* at 31.  On November 17, 2003, the trial court ordered a psychological evaluation of Petitioner per Trial Counsel's request at the initial sentencing hearing.  Exh. K.  When the parties reconvened on December 18, 2003, Trial Counsel informed the court that Petitioner terminated his services.  Exh. L at 2–3.  Petitioner maintained that he could represent himself and that, in his opinion, Trial Counsel should be dismissed because he did not have Petitioner's "best interests at heart." *Id.* at 5.

As noted above, in order for Petitioner to prove *Strickland* prejudice, he must demonstrate "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Glenn*, 743 F.3d at 409 (quoting *Albrecht*, 485 F.3d at 127).  A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Petitioner is unable to satisfy the second prong of *Strickland* because he cannot prove that "but for" Trial Counsel's abandonment during sentencing that the judge would have imposed a different sentence.  Trial Counsel withdrew his representation of Petitioner prior to the second day of the sentencing hearing because "under the [Pennsylvania Rules of Professional Conduct,] having been discharged," he had "an obligation to ask for leave to withdraw and then let the

Court decide what [he] should do now."  Exh. L at 3.  The trial court decided to continue the sentencing despite Petitioner proceeding *pro se*, but required Trial Counsel to remain in the courtroom as standby counsel.  *Id.* at 11–12.  The court provided Petitioner with the opportunity to present evidence and Petitioner provided the court with documentation from his employer and documentation of the trainings and certificates he earned throughout the years.  *Id.* at 13–14.  Petitioner also called Ms. Testerman to testify on his behalf.  *Id.* at 14–15.  The court also allowed Petitioner to address the Court prior to imposing its sentence.  *Id.* at 15–16.  The prosecution did not present any additional evidence or testimony.  Therefore, there was nothing left for the trial court to do but impose its sentence.  Trial Counsel had no further documents to present to the court and would have only presented its witnesses, which Petitioner satisfactorily presented to the court.  Accordingly, Petitioner fails to demonstrate that he was prejudiced by Trial Counsel's alleged abandonment at trial and therefore the claim must be denied.

### H.  Claim M: Appellate Counsel Failed to Perform an Independent Investigation into the Trial Record

Seventh, Petitioner contends that Appellate Counsel was ineffective for not performing an independent investigation into the trial record to identify meritable issues for appeal and for not briefing these issues to the court.  Respondents argue, however, that this claim is unreviewable because it fails to include allegations of Trial Counsel ineffectiveness.  This Court agrees.  *Martinez* "recognize[ed] a narrow exception:  Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance *at trial*."  *Martinez*, 132 S. Ct. at 1315 (emphasis added). Therefore, because *Martinez* has no impact on the validity of this claim against Appellate Counsel, the Court concurs with Judge Pollak's initial ruling that this claim was procedurally defaulted and Petitioner failed to show cause and prejudice to excuse the default.  Mem. Op., at 4–5.

I.    *PCRA Counsel Failed to Independently Search the Record for Merit Issues for the PCRA Petition and to Brief Them to the Court*

Lastly, Petitioner contends that PCRA Counsel was ineffective for not independently searching the record for meritable issues for post-conviction relief and briefing these issues to the court. This argument, however, is not subject to a *Martinez* analysis because *Martinez* "did not recognize a new substantive constitutional right." *Daniels v. Walsh*, No. 12–3461, 2013 WL 5049775, at *8 (E.D. Pa. Sept. 12, 2013). It is well-settled that "a criminal defendant [has] no right to counsel beyond his first appeal in pursuing state discretionary or collateral review." *Coleman*, 501 U.S. at 756. Thus, "[i]n the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation." *Id. at* 754. Therefore, "any attorney error that led to the default of [Petitioner's] claims in state court cannot constitute cause to excuse the default in federal habeas." *Id.* at 757. In sum, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Accordingly, "it remains true that there is no constitutional right to PCRA counsel; ineffectiveness of PCRA counsel does not entitle one to habeas relief." *Daniels*, 2013 WL 5049775, at *8.

Since Petitioner's claim that PCRA Counsel was ineffective is not a ground for federal habeas relief, this claim is denied.

## IV.    CONCLUSION

Accordingly, the Court finds that Petitioner's ineffective assistance of trial counsel claims failed to satisfy *Strickland* and thus, under *Martinez*, post-conviction counsel's alleged

ineffectiveness cannot constitute cause to excuse the procedural defaults.  Petitioner's Amended

Petition is denied.[11]

      An appropriate Order accompanies this Opinion.

---

[11] A certificate of appealability shall not issue.  A petitioner does not have an absolute right to a certificate of appealability.  *Miller-El*, 537 U.S. at 335 (citing 28 U.S.C. § 2253 (2012)).  Rather, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).   Accordingly, "[u]nder the controlling standard, a petitioner must "'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Petitioner has not made such a showing and thus the certificate of appealability shall not issue.